BOLIN, Judge.
While confined to a mental institution Fannie Lord Plunkett died testate leaving no forced heirs. By her olographic will she named as sole beneficiary her husband, Elgie Plunkett, who filed an application to probate the will. Collateral relatives of the deceased, who would have inherited in the absence of the will, opposed the probate of the will on grounds of ingratitude by Mr. Plunkett toward deceased. The case was submitted upon an agreed statement of fact resulting in a judgment dismissing the opposition and opponents appeal.
There is no question as to the form of the will or the capacity of the testatrix at the time of its confection. The sole issue is whether the stipulated facts justify a revocation of the testament because of actions by the beneficiary toward the testatrix during her lifetime.
Elgie Plunkett and Fannie Lord were married in 1932. The will was dated March 22, 1933. Subsequently Mrs. Plunkett became mentally ill and, on the application of her husband, was committed to a mental institution in 1952 where she remained until her death in 1959. Soon after Mrs. Plunkett was admitted to the mental hospital Mr. Plunkett began living in the family home with a woman other than his wife, and continued such relationship until Mrs. Plunkett’s death. In 1954, Elgie Plunkett and his woman companion obtained a marriage license, went through a marriage ceremony in Mississippi and of this illicit relationship seven children were born.
Appellants, as the only legal heirs of Fannie Plunkett, contend the will should be annulled on the ground of the ingratitude of Elgie Plunkett. It is conceded testatrix took no express action to revoke the will hut it is urged that Louisiana Civil Code Article 1691 provides for the tacit revocation of testaments. This article provides:
“The revocation of testaments by the act of the testator is express or tacit, general or particular.
“It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
“It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
“It is general when all the dispositions of a testament are revoked.
“It is particular when it falls on some of the dispositions only, without touching the rest.
“However, in all cases, a legacy or disposition shall be deemed revoked in the *795 event that the legatee has unlawfully taken the life of the testator, and said legacy or disposition shall be deemed not written.”
In order for a will to be revoked under the provisions of the above codal article there must be an act by the testator whether it be express or implied. Indeed, the first paragraph of the article seems to make this abundantly clear. The only exception, contained in the last paragraph, is that when the legatee has unlawfully taken the life of the testator the disposition shall be deemed not written.
We deem the controlling law to be the following Louisiana Civil Code Articles:
“Art. 1559. Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
“1. The ingratitude of the donee;
“2. The non-fulfillment of the eventual conditions, which suspend their consummation;
“3. The non-performance of the conditions imposed on the donee;
“4. The legal or conventional return.” (Emphasis added)
“Art. 1560. Revocation on account of ingratitude can take place only in the three following cases:
“1. If the donee has attempted to take the life of the donor;
“2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries;
“3. If he has refused him food, when in distress.” (Emphasis added)
“Art. 1710. The same causes which, according to the foregoing provisions of the present title, authorize an action for the revocation of a donation inter vivos, are sufficient to ground an action of revocation of testamentary dispositions; provided, however, that no charges or conditions can be imposed by the testator on the legitimate portion of forced heirs, nor can they lose their inheritance for any act of ingratitude to the testator, prior to his decease. That he has not disinherited them shall be sufficient evidence of his having forgiven the offense.”
“Art. 1711. If the action be founded on a grievous injury done to the memory of the testator, it must be brought within a year from the day of the offense.” (Emphasis added)
The issue can be further narrowed to a question of whether the stipulated facts in this record reflect Mr. Plunkett committed acts sufficient to constitute “a grievous injury to the memory of the testator”. We think not. Deplorable though the acts of Mr. Plunkett may have been they only reflect upon his moral conduct. What acts on his part would be sufficient to cause grievous injury to the decedent’s memory is something we are not called upon to decide. Suffice to say it would require acts not merely reflecting upon the moral character of the beneficiary under the will but serious and reprehensible acts directed toward the memory of the testator.
For the reasons assigned the judgment is affirmed at appellants’ costs.